IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD CARRION : CIVIL ACTION
:
v. : NO.  08-1171
:
TOM CORBETT, et al. :

**MEMORANDUM**

LOWELL A. REED, Jr., Sr. J                                                  June 11, 2008

Presently before this court is the *pro se* petition for writ of habeas corpus filed by

petitioner Richard Carrion ("Carrion") and the response and reply[1] thereto (Doc. Nos. 4, 7, 8).

For the reasons set forth below, Carrion's petition will be dismissed.

**I.      PROCEDURAL HISTORY**

On July 28, 2003, in the Court of Common Pleas of Lehigh County, Pennsylvania,

Carrion entered an open guilty plea to one count of third degree murder and one count of escape.

On August 25, 2003, Carrion was sentenced to a term of 20 to 40 years incarceration for the third

degree murder conviction and a consecutive term of 6 months to 2 years for the escape

conviction.  At his guilty plea, Carrion was represented by James T. Anthony, Esquire

("Anthony").  On September 2, 2003, Carrion filed a petition for reconsideration of sentence,

which was denied by the trial court on October 2, 2003.  On October 27, 2003, Carrion filed a

notice of appeal in the Superior Court of Pennsylvania.  The Superior Court affirmed the

judgment of sentence, thereby denying Carrion's appeal, on July 19, 2004.  Carrion did not seek

allowance to appeal to the Pennsylvania Supreme Court.

---

[1]I note that the reply is significantly more expansive than the petition, however, since the arguments in the
reply merely serve to provide more support for the arguments made in the petition, the court considered all of the
reply.

On September 14, 2004, Carrion filed a *pro se* Post-Conviction Collateral Relief

Act ("PCRA") petition.  Richard Webster, Esquire ("Webster") was appointed as counsel and

filed an amended PCRA petition.[2]  On December 13, 2005, the PCRA court dismissed the

petition.  The Superior Court affirmed the denial of the PCRA relief on August 14, 2006, and the

Pennsylvania Supreme Court denied allocatur on May 1, 2007.  On March 27, 2008, Carrion

filed the instant petition for writ of habeas corpus[3] seeking to withdraw his guilty plea and

proceed to trial.[4]

## II.    FACTUAL HISTORY

As of July 2001, Carrion was incarcerated at the Lehigh County Men's

Community Corrections Center for non-support, however, he was allowed to leave the

corrections center pursuant to the terms of the work-release program to perform his job at

Outback Steakhouse.  (Guilty Plea N.T., at p. 10).  On July 7, 2001, Carrion failed to appear for

work or report back to the work release center that evening, and, in fact, was not apprehended for

---

[2]In his amended PCRA petition, Carrion argued that his rights under the 5th, 6th, and 14th Amendments were violated because of ineffective assistance of counsel and because his guilty plea was unlawfully induced.  (PCRA Opinion, at pp. 3-4).  Specifically, Carrion alleged that James Anthony, Esquire ("Anthony") provided ineffective counsel by: (1) advising him to plead guilty to third degree murder, which he did not commit; (2) coercively forcing him to plead guilty by telling Carrion he could not help him; (3) failing to review the evidence and relevant case law; and (4) failing to present, represent, and litigate Carrion's factual innocence.  (Id. at p. 4).  Additionally, Carrion asserted that Nathan Schiesser, Esquire ("Schiesser") was ineffective by failing to timely file a motion to withdraw his guilty plea and by failing to review the relevant evidence and law.

[3]In his habeas petition, Carrion argues that: (1) his 6th and 14th Amendment rights were violated by Anthony's ineffective assistance by coercing him to plead guilty to a crime he did not commit and had not been explained to him; (2) his 5th, 6th, and 14th Amendment rights were violated because his plea was unknowingly and unintelligently made; and (3) the state courts' rulings that his counsel was not ineffective and his guilty plea was knowing and intelligent were contrary to established federal law.  As discussed *infra*, this court considered all of Carrion's arguments that were presented to and/or ruled on by the state courts.

[4]Carrion's previous petition for writ of habeas corpus, which he filed on August 30, 2007, was dismissed without prejudice by this court (Doc. No. 5) for failure to comply with an order filed on October 10, 2007 (Doc. No. 3) to return a completed petition on the correct form by a date certain.  Carrion v. Corbett, et al., No. 07-3621 (E.D. Pa. Dec. 11, 2007).

157 days. (Id).

      During the week of August 19, 2001, Carrion alleged that a man named Kevin Knight ("Knight") robbed him. (Guilty Plea N.T., at pp.13-14). Witnesses stated that Carrion told them that he wanted to kill Knight because of the robbery. (Guilty Plea N.T., at p. 13). On the night of August 26, 2001, Deborah Dunbar ("Dunbar") stated that Carrion paged her to ask if she had seen Knight. (Id). Dunbar reported she had just seen Knight and Terence Brown ("Brown"). (Id). At approximately 2:00 in the morning, police responded to a call of shots fired with an individual down. (Guilty Plea N.T., at p. 10). Upon their arrival, the police found Brown lying on the ground near a Nissan Maxima vehicle with an apparent gunshot wound to the head. (Guilty Plea N.T., at p. 10-11). Brown was pronounced dead at Lehigh Valley Hospital Cedar Crest. (Guilty Plea N.T., at p. 11). An autopsy determined that the cause of death was a single gunshot wound to the head. (Id). Witnesses stated that a dark, mid-sized vehicle had stopped at the intersection and then four to five gunshots were fired from the driver's side of the vehicle, one of which struck Brown, causing him to fall to the ground. (Guilty Plea N.T., at pp. 11-12). Carrion admitted to the police that he was the driver of the car from which shots were fired. (Guilty Plea N.T., at p. 14). Carrion admitted to his attorney that he knew Donald Miller ("Miller"), who was sitting behind Carrion in the car, was planning on shooting Knight. (PCRA N.T., at p. 106). Additionally, Carrion's girlfriend at the time, Marlene Young, who was also in the vehicle at the time of the shooting, stated that after Brown was shot, Carrion said, "We got this n*gger." (PCRA N.T., at p. 99). The Commonwealth of Pennsylvania believed that the shots fired at Brown were intended for Knight. (Guilty Plea N.T., at p. 14).

### III.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") increased the deference federal courts must give to the factual findings and legal determinations of the state courts.  Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000), cert.denied, Werts v. Vaughn, 532 U.S. 980 (2001).  Under 28 U.S.C. § 2254(d), as amended by the AEDPA, the court may grant a petition for habeas corpus only if:  (1) the state court's adjudication of the claim "resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;" or (2) the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

In Williams v. Taylor, the United States Supreme Court further interpreted and clarified the AEDPA standards.  529 U.S. 362 (2000).  The Court explained that under the "contrary to" clause, the federal court may grant the writ if the state court: (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), cert. denied, Hameen v. Delaware, 532 U.S. 924 (2001) (citing Williams, 529 U.S. at 412-13).  The Court in Williams also found that under the "unreasonable application" clause, the federal court may grant the writ if the state court: (1) identifies the correct legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case, or (2) either unreasonably

extends a legal principle from Supreme Court precedent to a new context where it should not

apply or unreasonably refuses to extend that principle to a new context where it should apply.

Williams, 529 U.S. at 407; Hameen 212, F.3d at 235. Ultimately, "a federal habeas court may

not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly.

Rather, that application must also be unreasonable." Id. at 411.

## IV.    DISCUSSION

**A.    CARRION ASSERTS THAT HIS TRIAL COUNSEL WAS  INEFFECTIVE FOR HIS EXPLANATION OF THE RELEVANT LAW AND TELLING HIM THAT PLEADING GUILTY WAS IN HIS BEST INTEREST.**

Carrion contends that his counsel for the plea and sentencing, Anthony,[5] provided

ineffective assistance by failing to explain the relevant law and forcing him to plead guilty. The

specific standard for ineffective assistance of counsel claims under the AEDPA is set forth in the

two prong test of Strickland v. Washington, 466 U.S. 668 (1984). Under the first prong of

Strickland, a petitioner must show that trial counsel's performance was deficient, meaning that

counsel did not provide reasonably effective assistance as defined by prevailing professional

norms. Outten v. Kearney, 464 F.3d 401, 414 (3d Cir. 2006) (citing Strickland, 466 U.S. at 687-

88). Thus, the petitioner must establish that counsel's representation fell below an objective

standard of reasonableness. Id. Moreover, counsel's reasonableness must be assessed on the

---

[5]Carrion's amended PCRA petition and state appeals alleged the ineffectiveness of Nathan B. Schiesser, Esquire in addition to Anthony, however, Carrion did not explicitly include the argument about Schiesser in his habeas corpus petition before this court. (Doc. No. 4). Carrion alleged that Scheisser, who worked on this case as an assistant to Anthony, failed to file a timely motion to withdraw Carrion's guilty plea. However, the evidence shows that Scheisser did file a timely motion to withdraw the guilty plea when requested, and there is no evidence to show that Schiesser ever failed to do so. Thus, assuming *arguendo* that this argument is properly before this court, Carrion has failed to show Schiesser's conduct fell below an "objective standard of reasonableness" or prejudiced him in a way that affected the outcome of the proceeding.

facts of the particular case, viewed as of the time of counsel's conduct.  Id. (citing Strickland,

466 U.S. at 689).  Under the second prong of Strickland, the petitioner must establish that the

deficient performance prejudiced the defense.  Id. (citing Strickland, 466 U.S. at 687).  Thus, the

petitioner must demonstrate that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  Id. (citing

Strickland, 446 U.S. at 694).  The petitioner must also establish that the claim has arguable legal

merit.[6]  Com. v. Natividad, 938 A.2d 310, 321 (Pa. 2007).

Carrion argues that Anthony never explained the elements of third degree murder[7]

to him and coerced him into a guilty plea.  Anthony and the other attorney appointed to represent

him, Nathan B. Schiesser, Esquire ("Schiesser"), testified that Anthony thoroughly went through

the evidence with Carrion and explained the accomplice liability theory more than once.  (PCRA

N.T., at pp. 99, 159-60).  As Anthony noted, the judge who accepted Carrion's guilty plea also

explained the elements of third degree murder and the accomplice liability theory, and Carrion

told the judge that he understood what the judge had explained to him.  (PCRA N.T., at pp. 99-

100; Guilty Plea N.T., at pp. 14-18).  Additionally, Anthony testified that he advised Carrion not

---

[6]Carrion argues that requiring the petitioner to show the underlying claim has merit is inconsistent with Strickland.  However, the United States Court of Appeals for the Third Circuit has held that Pennsylvania courts requiring a showing that the underlying claim has merit are not in conflict with Strickland.  Rompilla v. Horn, 355 F.3d 233, 248 n.9 (3d Cir. 2004), reversed on other grounds, Rompilla v. Beard, 545 U.S. 374 (2005) (The United States Court of Appeals for the Third Circuit noted that although considering the merit of the underlying claim is not an "explicit step under Strickland," that the court has held it can be a "determinative factor" in the Strickland analysis.);  Werts, 228 F.3d at 203-04;  Bookard v. Tennis, No. 05-5740, 2007 WL 2022097, at *5 (E.D. Pa. July 10, 2007); Williams v. Wolfe, No. 04-6, 2004 WL 1126282, at *2 n.1 (E.D. Pa. May 20, 2004), adopted by, Williams v. Wolfe, No. 04-6, 2004 WL 1638134 (E.D.Pa. July 22, 2004).

[7]Carrion also argues that he plead guilty to a crime he was not charged with and appears to think that the actual shooter had to have been charged with murder.  However, Carrion was charged pursuant to 18 Pa. C.S.A. § 2501 with criminal homicide, which encompasses third degree murder, and the evidence demonstrates this was clearly explained to Carrion.  (Guilty Plea N.T., at pp. 14-18; PCRA N.T., at pp. 99-101, 108).  Additionally, 18 Pa. C.S.A. § 306(g) clearly provides that the accomplice can be charged and convicted even if the person who allegedly committed the offense has not been charged, has been acquitted, etc.

to take the *nolo contendere* plea offered by the prosecutor because it had conditions attached to it

that would require Carrion to give up his appellate rights.  (PCRA N.T., at pp. 103-04).  Anthony

also told Carrion that he would not have him plead guilty if Carrion did not know that the shooter

was planning on shooting Knight.  (PCRA N.T., at p. 105).  However, Carrion then admitted he

was aware of the planned shooting, and Anthony stated that he went over that admission in detail

with Carrion to make sure he actually meant that and was not just trying to avoid trial.  (PCRA

N.T., at p.106).  Anthony also testified that since the prosecutor had made it clear that the offer to

plead guilty to third degree murder would no longer be available if Carrion did not plead on July

28, 2003, Anthony made sure Carrion knew that if he did not plead guilty to third degree murder

then, his only options would be pleading guilty to first degree murder or going to trial.  (PCRA

N.T., at p. 105).  Anthony testified that he never told Carrion there was nothing he could do for

him, but he did make it clear to Carrion that he thought there was a strong possibility he would

be found guilty of first degree murder if he went on trial.  (PCRA N.T., at p.110).  On the day of

sentencing, Carrion, his mother, and his sister testified that Anthony told them Carrion should

withdraw his motion to withdraw his guilty plea because if Carrion went on trial, he would be

found guilty and get the death penalty.  (PCRA N.T., at pp. 54, 77, 87).  In contrast, Anthony

testified that he told Carrion and his mother that he did not think Carrion would get the death

penalty because of the lack of aggravating circumstances.  (PCRA N.T., at pp. 101).  Anthony

felt Carrion's guilty plea was knowing and intelligent and stated that he did not threaten or force

Carrion to plead guilty.  (PCRA N.T., at p. 110).

I conclude that Anthony's representation did not fall below "an objective standard

of reasonableness" and did not prejudice Carrion in such a way that the outcome of the case

would have been different.  Thus, the state court's determinations were reasonable and not

contrary to established law.  See Strickland, 466 U.S. at 687-89.

**B.     CARRION ARGUES THAT THE PCRA COURT ERRED IN ITS DETERMINATION THAT THE GUILTY PLEA COLLOQUY WAS KNOWINGLY AND INTELLIGENTLY TENDERED.[8]**

It is well established law that a guilty plea is only valid if the defendant was aware

of his rights and intelligently and knowingly waived them.  Boykin v. Alabama, 395 U.S. 238,

242 (1969); Taylor v. Horn, 504 F.3d 416, 440 (3d Cir. 2007).  Where the court followed the

dictates of the comment to Pa.R.Crim.P. 590 that a guilty plea colloquy must cover: (1) the

nature of the charges; (2) the factual basis for the plea; (3) the right to a jury trial; (4) the

presumption of innocence; (5) the sentence ranges; and (6) the court's ability to deviate from any

recommended sentence, it has been found that the plea was knowing, intelligent, and voluntary.

Frazier v. Wilson, No. 06-3141, 2008 WL 1848093, at *8 (E.D. Pa. April 24, 2008).  Federal law

does not require a more detailed guilty plea colloquy than Carrion received.  See Taylor, 504

F.3d at 440-44, 447.

Carrion filled out and signed a written guilty plea colloquy and told the court

when questioned about it that he understood it, gave truthful answers, did not have any questions,

had plenty of time to discuss it with his lawyers, and understood that he was bound by his

answers and could not come back later and change them.  (Guilty Plea N.T., at pp. 5-7).

Additionally, the trial judge conducted a very extensive verbal colloquy including the possible

sentences, the factual basis, the crime with which Carrion was charged, the elements of first,

---

[8]Although Carrion argued before the PCRA court that his guilty plea was not knowingly and voluntarily tendered, the court noted that Carrion had waived this argument since it was not presented in his amended PCRA petition. (PCRA Opinion, at p. 11).  However, the PCRA court analyzed the argument and determined that the guilty plea was knowingly and voluntarily made. (PCRA Opinion, at pp.11-12).  I note that this issue was clearly briefed for and ruled on by the Superior Court and fully briefed in front of this court. (Superior Court Opinion, at p. 12; Appellee Brief, at pp. *11-12).  Since this argument has been argued before and ruled on by the appropriate state courts and has been briefed before this court, I will treat this issue as properly before this court.

second, and third degree murder, and the accomplice liability theory.  (Guilty Plea N.T., at pp. 9-19).  Throughout the guilty plea hearing, Carrion testified that he understood the entire colloquy.[9] (Guilty Plea N.T., at 5-19).   I conclude that it is clear that Carrion was aware of his rights and intelligently and knowingly waived them.  Thus, the state courts' conclusions that the guilty plea colloquy met the state law standards were reasonable and not contrary to the federal law.  See Boykin, 395 U.S. at 242;  Taylor, 504 F.3d at 440-44, 447.

## V.    CONCLUSION

After close and objective review of the arguments and evidence, I find that Carrion's petition for writ of habeas corpus is meritless.  Carrion admitted that he was at the scene of the crime and knew the shooting was going to take place.  His admissions are supported by the testimony of the grand jury witnesses.  In the instances raised by Carrion, the state courts' conclusions were reasonable and not contrary to the law and counsels' actions were reasonable and not so prejudicial that different actions would have altered the outcome of the trial.  As a result, Carrion's petition will be dismissed.

Similarly, because Carrion's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing nor is there a need to appoint counsel, as neither device would have changed the outcome of this case.  See Campbell v. Vaughn, 209 F.3d 280, 287 (3d Cir. 2000), cert. denied, Campbell v. Johnson, 531 U.S. 1084 (2001); Reese v. Fulcomer, 946 F.2d 247, 263-64 (3d Cir.1991), superseded on other grounds by statute, 28 U.S.C. § 2254(d).

An appropriate order follows.

---

[9]Although Carrion now claims he lied during the guilty plea colloquy, the judge clearly told Carrion that he would be bound by his answers and could not change them later, which Carrion stated he understood.  (Guilty Plea N.T., at p. 7).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD CARRION            :        CIVIL ACTION
                           :
        v.                 :        NO.  08-1171
                           :
TOM CORBETT, et al.        :

## ORDER

AND NOW, this 11th day of June, 2008, upon consideration of the petition for

writ of habeas corpus and the response and reply thereto (Doc. Nos. 4, 7, 8), it is hereby

**ORDERED** that for the reasons set forth above, the petition is **DISMISSED with prejudice**

**and without a hearing**.

**IT IS FURTHER ORDERED** that no certificate of appealability will be issued

pursuant to 28 U.S.C. §2253 because petitioner has failed to make a substantial showing of

denial of a constitutional right.

The Clerk of Court is hereby directed to mark this case closed.


                                   S/Lowell A. Reed, Jr.
                                   LOWELL A. REED, JR., Sr. J.